## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | **Chapter 13** |
| **ROBERT R. COOLEY** | : | |
| **Debtor** | : | **Case No. 06-11586 (JKF)** |
| ――――――――――――――― | | |
| **ROBERT R. COOLEY** | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| **WACHOVIA MORTGAGE COMPANY,** | : | **Adversary No. 06-0279** |
| **CHASE MANHATTAN MORTGAGE** | | |
| **CORPORATION, and** | : | |
| **FIRST FINANCIAL MORTGAGE GROUP,** | | |
| **INCORPORATED** | : | |
| **Defendants** | : | |
| ――――――――――――――― | | |

## <u>MEMORANDUM OPINION</u>

BY:    JEAN K. FITZSIMON
       United States Bankruptcy Judge


Chase Manhattan Mortgage Company and Wachovia Bank, N.A. , as

Trustee and successor in interest to First Financial Mortgage Group, Inc., moved

to dismiss the complaint filed by debtor/plaintiff, Robert R. Cooley, in the above-

captioned proceeding.[1]  The Complaint contains two counts.  Count I asserts a

claim for rescission and related damages under the Truth-in-Lending Act ("TILA"),

15 U.S.C. §§1601 *et seq.;* Count II alleges a claim for damages under the Real

Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*

 The major thrust of the Motion is that Debtor's claims should be dismissed

based on the *Rooker-Feldman* doctrine because a mortgage foreclosure

judgment was entered against him in state court.  This particular argument for

dismissal with regard to rescission claims recently was presented to and

addressed by three other bankruptcy judges in this district with regard to

rescission claims.  See <u>Madera v. Ameriquest Mortgage Co. (In re Madera)</u>,

___ B.R. ___, 2007 WL 521323, at *4-*6 (Bankr. E.D. Pa. Feb. 8, 2007)

(Sigmund, J) (TILA); <u>Randall v. Bank One National Association (In re Randall)</u>,

___ B.R. ___, 2006 WL 3833919, at *2-*10 (Bankr. E.D. Pa. Nov. 1, 2006) (Fox,

J.) (TILA); <u>Faust v. Deutsche Bank National Trust Company (In re Faust)</u>, 353

B.R. 94, 100 (Bankr. E.D. Pa. 2006) (Raslavich, J.) (the Unfair Trade Practices

and Consumer Protection Law, 73 P.S. §201-1 et seq.).  All three judges applied

the *Rooker-Feldman* doctrine in favor of the mortgagee defendants in their cases.

---

 [1] Incorporated by reference into the Motion is the Memorandum of Law of
Chase Manhattan Mortgage Corporation and Wachovia Bank, N.A., as Trustee,
as Successor in Interest to First Financial Mortgage Group, Inc., in Support of
Motion to Dismiss Complaint of Robert R. Cooley.

Judge Raslavich issued his published decision in <u>Faust</u> shortly after my

hearing on the Motion.  In light of Judge Raslavich's decision, Debtor requested

permission for the parties herein to file supplemental memoranda on the *Rooker-*

*Feldman* doctrine.  This Court granted the request and the parties filed their

supplemental memoranda.  Consequently, in rendering our decision, the Court

has the benefit of the parties' additional views on this issue.

For the reasons set forth below, the Motion shall be granted in part. Count I

of the Complaint shall be dismissed based on the *Rooker-Feldman* doctrine.[2]

The Motion shall be denied as to Count II since it states a claim upon which relief

may be granted.


## BACKGROUND

On October 20, 2003, Debtor obtained a loan from First Financial to

refinance the outstanding mortgage secured by his residence.  <u>See</u> Complaint ¶5.

---

[2]  State courts have concurrent jurisdiction with the federal court over TILA
rescission claims.  <u>See</u> <u>R.G. Financial Corp. v. Vergara-Nunez</u>, 446 F.3d 178,
184 (1st Cir. 2006) (recognizing that "state courts possess concurrent jurisdiction
over TILA claims[.]"); <u>Gandy v. The Peoples Bank and Trust Co.</u>, 224 B.R. 340,
344 (S.D. Miss. 1998) ("Under the TILA, federal and state courts have concurrent
jurisdiction."); <u>Stokes v. Twin City Motors, Inc.</u>, 490 F. Supp. 742, 744 (E.D. Ark.
1980) (holding that concurrent jurisdiction of TILA claims is vested by the Act in
state courts of competent jurisdiction."); <u>see</u> <u>also</u> 15 U.S.C. §1640(e) (granting
jurisdiction to any federal district courts and any court of competent jurisdiction).
Consequently, this Court's dismissal of Debtor's TILA rescission claim does not
necessarily prevent Debtor from pursuing his claim; it only requires him to pursue
it in state court.

The loan was secured by a mortgage on Debtor's residence.  Id. ¶¶3, 10-16.

Wachovia is the current holder of this mortgage and loan.  Id. ¶¶4, 10.

On October 1, 2004, Wachovia filed a mortgage foreclosure action in the

state court, captioned *Wachovia Bank, N.A. v. Cooley*, No. 04-07858.  See

Exhibit "A" to Defendants' Memorandum.[3]  On January 21, 2005, the State Court

entered a default judgment against Debtor in the amount of $160,760.18.  See

Exhibits A & B to Defendants' Memorandum.

On April 19, 2006, Debtor filed the above-captioned bankruptcy case under

Chapter 13 of the Bankruptcy Code.  On May 5, 2006, Chase filed a proof of

claim on behalf of Wachovia.  Chase listed the principal balance owed on the

secured claim as $140,892.50 and the arrearage, as of the date upon which

Debtor filed his petition, as $51,963.65.  See Exhibit F to the Complaint.

On May 22, 2006, Debtor commenced the instant adversary proceeding by

filing the Complaint against Wachovia, Chase and  First Financial Mortgage

Group (the original lender on the loan).  See Complaint ¶¶ 4-5.  Count I of the

Complaint asserts a claim against defendants for rescission and related damages

---

[3]  As exhibits to Defendants' Memorandum, Wachovia and Chase attached
copies of the following items from Wachovia's mortgage foreclosure action
against Debtor: (i) docket report [Exhibit "A"]; (ii) Notice of the Judgment by
Default [Exhibit "B"]; and (iii) the Assessment of Damages and Entry of Judgment
[Exhibit "C"].  Plaintiff has not objected to my consideration of these exhibits.  In
any event, I may consider them in conjunction with the Motion because they are
matters of public record.  See infra text at 6-7.

under TILA. Count II asserts a claim for damages, solely against Chase, for

failing to respond to Debtor's alleged "qualified written request" ("QWR") for

information regarding the loan as required by RESPA.

In the Complaint, Debtor alleges, among other things, that:

(i)     The loan papers contained inaccurate
        disclosures and material non-disclosures in
        violation of TILA entitling him to rescind the
        loan, see Complaint ¶¶ 6-7, 13-16;

(ii)    Debtor's counsel forwarded a letter to
        Wachovia and Chase on or about May 1,
        2006, rescinding the loan under TILA,
        see id. ¶8; and

(iii)   The rescission letter constituted a QWR
        under RESPA requesting information
        regarding the loan, see id.

In the Complaint, Debtor made no mention of, or reference to, the foreclosure

action or judgment.

On June 22, 2006, Chase and Wachovia filed their Motion, arguing that:

(i)     Counts I (TILA) and II (RESPA) should be
        dismissed for lack of subject matter
        jurisdiction based on the *Rooker-Feldman*
        doctrine;[4]

---

[4] Wachovia and Chase also argue that Count I is precluded under res
judicata and collateral estoppel principles.  It is unnecessary for this Court to
resolve these issues because we conclude, based on the *Rooker-Feldman*
doctrine, that we do not have subject matter jurisdiction over Debtor's claim for
rescission in Count I.

> (ii)    Debtor's claim for rescission in Count I is precluded by collateral estoppel; and
>
> (iii)   Count II should be dismissed because Chase responded to Debtor's alleged QWR.

See Memorandum.

## DISCUSSION

## I.  STANDARD OF REVIEW

In the Motion, defendants seek to have the Complaint dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(1) & (b)(6).[5]  Courts distinguish between "facial" and "factual" attacks on subject matter jurisdiction.  United States v. Pennsylvania Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).  Courts review a "facial" attack based on the parties' pleadings but may look beyond the pleadings and consider affidavits and other evidence submitted by the parties in determining whether jurisdiction exists when ruling upon a "factual" attack.  Taylor v. Whyy, Inc., 2006 WL 2711748, at *2 (E.D. Pa. Sept. 20, 2006).  This court shall treat the Motion as raising a "facial" attack.  In ruling on defendants' motion to dismiss for

---

[5]  Rule 12 is incorporated herein pursuant to Fed.R.Bank.P. 7012.

6

lack of subject matter jurisdiction, we shall accept the allegations of the Complaint

as true and view them in the light most favorable to the Debtor.  Peregrine

Surgical, Ltd. V. Synergetics, USA, Inc., 2006 WL 3857492, at *2 (E.D. Pa.

Dec. 29, 2006).  We may also consider the exhibits incorporated by reference into

defendants' Motion since they are matters of public record.  Id.[6]  As noted above,

Debtor has not objected to our consideration of these exhibits.

        In ruling upon the defendants' request for dismissal pursuant to 12(b)(6),

the Court shall consider the same material mentioned above.  See Jean

Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir.

2006) (quoting Southern Cross Overseas Agencies,Inc. v. Wah Kwong Shipping

Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999)) (to resolve a motion to dismiss, "a

court may properly look at public records, including judicial proceedings, in

addition to the allegations of the complaint."); Crisomia v. Parkway Mortgage, Inc.

(In re Crisomia), 2002 WL 31202722, at *2 n.8 (Bankr. E.D. Pa. Sept. 13, 2002)

(observing that court documents which are a matter of public record "are proper

---

[6] While this Court treats the Motion as asserting a facial attack on
jurisdiction, we would rule in the same way if we treated the Motion as raising a
factual attack.  Debtor has not contended that the exhibits attached to the Motion
are inaccurate or denied the existence of the foreclosure judgment.
Consequently, in ruling on a factual attack, we would accept as undisputed the
fact that Wachovia obtained the foreclosure judgment against Debtor on January
21, 2005.  See Randall, supra, 2006 WL 3833919, at *2 n.2 (treating the
defendant's motion to dismiss for lack of jurisdiction as a factual attack and
accepting as "uncontroverted" the fact that a default judgment in mortgage
foreclosure was entered against the debtor).

for judicial notice.").  As required on a motion to dismiss, the allegations of the

Complaint shall be accepted as true and viewed in the light most favorable to the

Debtor.  Buck v. The Hampton  Township School District, 452 F.3d 256, 260 (3d

Cir. 2006).  The request for dismissal shall be granted only if there is no

reasonable reading upon which Debtor would be entitled to relief.  Stanley v.

International Brotherhood of Electrical Workers, FLO-CIO CLC, 2006 WL

30980128, at *1 (3d Cir. Nov. 1, 2006); Taliaferro v. Darby Township Zoning

Board, 458 F.3d 181, 188 (3d Cir. 2006).

## II.  WHETHER COUNTS I AND II ARE BARRED
## BY THE *ROOKER-FELDMAN* DOCTRINE

Pursuant to 28 U.S.C. §1257, the Supreme Court of the United States is

the only federal court vested with jurisdiction over appeals from final state court

judgments.  Lance v. Dennis, 126 S. Ct. 1198, 1200 (2006).  Lower federal courts

are precluded under the *Rooker-Feldman* doctrine from "exercising appellate

jurisdiction over final state-court judgments."[7] Id. at 1200-01; see also Knapper v.

Bankers Trust Co. (In re Knapper), 407 F.3d 573, 580 (3d Cir. 2005) (reasoning

that the purpose of *Rooker-Feldman* doctrine is to prevent "'inferior' federal courts

from sitting as appellate courts for state court judgments.").

--------

[7] The *Rooker-Feldman* doctrine acquired its name from two Supreme
Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of
Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1982).

## A.  THE SCOPE OF THE *ROOKER-FELDMAN* DOCTRINE

In Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 544 U.S.

280, 282 (2005), the Supreme Court addressed the scope of the *Rooker-Feldman*

doctrine and reversed the Third Circuit which had held that the doctrine barred

the plaintiff's federal action.  See Exxon Mobil Corporation v. Saudi Basic

Industries Corporation, 364 F.3d 102 (2004).  At issue in Exxon was a dispute

over royalties between the plaintiff, Saudi Basic Industries Corp. ("SABIC"), and

the defendants, which were Exxon Mobil and two joint venture entities (the "Joint

Ventures") formed by SABIC and Exxon.  Id. at 103.

The legal saga which led to the Supreme Court's decision in Exxon began

when SABIC sued the Joint Ventures in state court.  Id.  Exxon and the Joint

Ventures responded to the state court action by filing a countersuit in federal

court.  Id.[8]  The Joint Ventures answered SABIC's state court complaint and

asserted, as counterclaims, the same claims they had filed in their federal action.

Id.  SABIC moved to dismiss the federal action on the ground of sovereign

immunity, but the district court denied its motion.  Id.  SABIC appealed to the

Third Circuit.  Id.  While SABIC's appeal to the Third Circuit was pending, a trial

---

[8]  In the state court action, SABIC sought a declaratory judgment that
royalty charges which it received did not violate its joint venture agreements with
the Joint Ventures.  364 F.3d at 103. In the federal action, Exxon and the Joint
Ventures sought the "converse declaratory judgment" that SABIC had
overcharged the Joint Ventures in violation of the joint venture agreements.  Id.

verdict was rendered in the Joint Venture's favor in the state court action.  Id.

SABIC appealed the verdict to the state appellate court.  Id.

In the Joint Ventures' federal action, the Third Circuit *sua sponte* raised the

issue of whether subject matter jurisdiction was lacking under the *Rooker-*

*Feldman* doctrine.  Id. at 104.  In its decision, the Third Circuit explained that:

> "a claim is barred by *Rooker-Feldman* under two
> circumstances: first, if the claim was 'actually litigated' in
> state court prior to the filing of the federal action or
> second, if the claim is 'inextricably intertwined with [the]
> state adjudication.'"

id. (*quoting* Desi's Pizza, Inc. V. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir.

2003) (*quoting* Parkview Assoc. Partnership v. City of Lebanan, 225 F.3d 321,

325 (3d Cir. 2000))).  The Third Circuit concluded that both circumstances were

present in the federal lawsuit. Id. at 104-06.  In so concluding, the Third Circuit

opined that: (i) the "actually litigated" requirement was met because Exxon's

claims in its federal lawsuit were identical to the claims upon which the verdict in

state court was based; and (ii) the "inextricably intertwined" requirement was met

because, by Exxon's own admission, it sought to maintain its federal lawsuit "as

an 'insurance policy' in order to relitigate the overcharge issue if SABIC

prevail[ed] in its efforts to overturn the state court verdict in favor of Exxon." Id. at

106.  The Third Circuit reasoned that, if SABIC prevailed in its appeal in state

court, Exxon's "federal action would squarely be seeking to invalidate a final

judgment of the state court, the *very* situation contemplated by *Rooker-Feldman's* 'inextricably intertwined' bar." Id.

According to the Supreme Court, it granted certiorari of the Third Circuit's decision in Exxon to "resolve conflict among the Courts of Appeals over the scope of the *Rooker-Feldman* doctrine." Exxon, supra, 544 U.S. at 290. The Supreme Court specifically noted that some lower courts were extending the contours of the *Rooker-Feldman* doctrine beyond those which it intended. Id. at 283. The Supreme Court decided, in particular, that the Third Circuit had "misperceived the narrow ground occupied by *Rooker-Feldman*" and, therefore, erred in dismissing Exxon's federal action for lack of subject matter jurisdiction. Id. at 284.

The Supreme Court cautioned that the *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." See id. at 284. It specifically instructed that 28 U.S.C. §1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. It also further explained that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a

11

case to which he was a party  . . . , then there is jurisdiction and state law

determines whether the defendant prevails under principles of preclusion.'" Id.

(quoting GASH Associates v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

Arguably, Debtor's claim for rescission is independent from the foreclosure

action and judgment and, therefore, not barred by the *Rooker-Feldman* doctrine.

His asserted right to rescission is based on TILA.  In Apaydin v. Citibank Federal

Savings Bank (In re Apaydin), 201 B.R. 716 (Bankr. E.D. Pa. 1996), Judge

Stephen Raslavich noted that the right of rescission under TILA is independent of

the mortgage upon which a foreclosure judgment is based.  He did so in the

context of rejecting a defendant's argument that, once a foreclosure judgment is

entered, the mortgage merges into the judgment and the right of rescission

disappears.  Judge Raslavich stated, in relevant part:

> The right of rescission does not emanate from plaintiffs'
> mortgage such that it disappears after the mortgage is
> merged with the judgment.  Rather, plaintiffs' rescission
> right arises from TILA and the regulations promulgated
> thereunder.  15 U.S.C. § 1635; 12 C.F.R. §226.23 ...
> This right continues to exist based on TILA, which,
> unlike the terms of the plaintiffs' mortgage is unaffected
> by the entry of the judgment.

201 B.R. 716, 721-22.[9]

---

[9] It is clear from the statutory provisions of TILA that the right of rescission
may continue after the commencement of a foreclosure action. For example,
§1635(i)(1) of TILA specifically recognizes that the right to rescission continues

(continued...)

12

Judge Raslavich observed that, "[a]ccording to TILA itself," the right to

rescission terminates only after the passage of three years or the sale of the

property, whichever occurs first.[10] Apaydin, 201 B.R. at 722.  Discussing this point

with respect to the defendant's argument on merger, Judge Raslavich stated:

> The TILA statute and regulations are, in fact, clear and
> unambiguous on this point.  [The defendant] is in effect,
> asking the Court to ingraft a third termination point upon
> the statute based on the doctrine of merger.  This Court,
> however, will apply the statute as written and hold that
> [the Debtor's] right to rescind for an improperly disclosed
> transaction is not impaired by the entry of a foreclosure
> judgment.

201 B.R. at 722.  But see R.G. Financial Corp. V. Vergara-Nunez, 446 F.3d 178,

187-88 (1st Cir. 2006) (ruling that principles of res judicata "may hasten the

---

[9](...continued)
after the "initiation of any judicial or nonjudicial foreclosure process on the primary
dwelling of an obligor[.]" 15 U.S.C. §1635(i)(1).  See also 12 C.F.R.
§226.23(h)(1).  In addition, §1635(i)(2), provides that, once a foreclosure action
has been instituted, a lower tolerance level applies in determining whether a TILA
violation has occurred.  See 15 U.S.C. §1635(i)(2).  See also 12 C.F.R.
§226.23(h)(2).

[10]  Under TILA, an obligor's right to rescind does not expire until "three
years after the date of consummation of the transaction or upon the sale of the
property, which occurs first[.]" 15 U.S.C. §1635(f).  In Beach v. Ocwen Federal
Bank, 523 U.S. 410, 417 (1998), wherein the Supreme Court held that there is no
right to rescission under TILA after the three year period in §1635(f) has expired,
the Supreme Court opined that the terms used in §1635(f) to address the right's
duration are "so straightforward as to render any limitation on the time for seeking
a remedy superfluous."

demise of a debtor's TILA based right of rescission."); Albano v. Norwest

Financial Hawaii, Inc., 244 F.3d 1061, 1064 n.2 (9th Cir. 2001) (holding that the

fact that TILA has a limited three year life "merely sets out the right's maximum

life span" and "does not affect procedural or substantive requirements that might

end its existence even earlier.").

 The view that a mortgagor's right to rescission under TILA survives the

entry of a foreclosure judgment is consistent with the language of §1635(b) of

TILA.  This section provides that when a mortgagor exercises his right to

rescission, any "security interest" given by him, "including any such interest

arising by operation of law, becomes void[.]" 15 U.S.C. § 1635(b) (underlining

added).  Under Pennsylvania law, a mortgage merges into a foreclosure

judgment but a mortgagee's security interest continues to exist after the entry of

the foreclosure judgment.  See First National Fidelity Corp. v. Perry, 945 F.2d 61,

64 (3d Cir. 1991) (recognizing the principle that a mortgagee's security interest

continues to exist after the entry of a foreclosure judgment and the merger of the

parties' contractual agreement into such judgment). Congress' use of the term

"security interest" instead of the term "mortgage" in §1635(b) lends support to the

contention that a mortgagee's right to rescission is independent of a foreclosure

judgment entered against him.

14

However, we need not resolve the issue of whether Debtor's claim is

independent of Wachovia's foreclosure judgment.  Since Exxon, the Third Circuit

has issued numerous decisions on the *Rooker-Feldman* doctrine.  As discussed

below, the Third Circuit's application of the *Rooker-Feldman* does not hinge on

the "independent claim" analysis.

### B.    THIRD CIRCUIT DECISIONS ON THE ROOKER-FELDMAN DOCTRINE AFTER *EXXON*

The Third Circuit decided Knapper, supra, dealing with the *Rooker-Feldman*

doctrine two months after the Supreme Court's opinion Exxon.[11]  In Knapper, the

debtor sought to have two pre-petition sheriff's sales vacated on the ground that

"the state court lacked personal jurisdiction over her."  Knapper, supra, 407 F.3d

at 581.  The debtor claimed that she was denied due process because she was

never properly served in the foreclosure actions which ultimately led to the

_____

[11]  In Lance v. Dennis, supra, which the Supreme Court decided after
Exxon, the Supreme Court emphatically explained that "*Rooker-Feldman* is not
simply preclusion by another name." 126 S. Ct. at 1202.  Commenting further on
this point, the Supreme Court stated:

> Congress has directed federal courts to look principally
> to *state* law in deciding what effect to give state-court
> judgments.  Incorporation of preclusion principles into
> *Rooker-Feldman* risks turning that limited doctrine into a
> uniform *federal* rule governing the preclusive effect of
> state-court judgments, contrary to the Full Faith and
> Credit Act.

Id. at 1202-03 (italics in original).

15

sheriffs' sales.  Id. at 578.  The Third Circuit held that the debtor's claim was

barred by the *Rooker-Feldman* doctrine.  In so ruling, the Third Circuit opined that

a federal claim is barred by the *Rooker-Feldman* doctrine in two circumstances,

namely:

> (1)     if the claim was actually litigated in state
>         court  prior to the filing of the federal action;
>         or
>
> (2)     if the claim is inextricably intertwined with
>         the state adjudication.

Knapper, supra, 407 F.3d at 580. With regard to the second circumstance listed

above, the Third Circuit instructed that:

> [a] federal claim is inextricably intertwined with an issue
> adjudicated by a state court when: (1) the federal court
> must determine that the state court judgment was
> erroneously entered in order to grant the requested
> relief; or (2) the federal court must take an action that
> would negate the state court's judgment. . . .  In other
> words, *Rooker-Feldman* does not allow a plaintiff to
> seek relief that, if granted, would prevent a state court
> from enforcing its orders.

Knapper, 407 F.3d at 581 (*quoting* Walker v. Horn, 385 F.3d 321, 330 (3d Cir.

2004) (citations, internal quotations and ellipses omitted) (emphasis added)).

The Third Circuit espoused these same principles more recently, albeit in a

slightly different way, when it held in Barnes v. Domitrovich, 2006 WL 1602545, at

16

*1 (3d Cir. June 7, 2006) (not precedential),[12] that the *Rooker-Feldman* doctrine

"bars lower federal courts from exercising jurisdiction over a case that is the

functional equivalent of an appeal from a state court judgment" and that a case is

the "functional equivalent" of an appeal from a state court judgment in the

following two situations:

> (1)  when the claim was actually litigated before the
> state court; or
>
> (2)  when the claim is inextricably intertwined with the
> state adjudication.

Id.  In Barnes, the Third Circuit explained that a "federal claim is inextricably

intertwined with an issue adjudicated in state court when a federal court must

determine that the state court judgment was erroneously entered to grant the

requested relief or the federal court must take action that would negate the state

court's judgment," id. (*quoting* Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004));

---

[12]  While Barnes is not binding authority because it is "not precedential," it
is "persuasive authority." Prudential Property and Casualty Insurance Company v.
Jefferson, 185 F. Supp.2d 495, 499 n.1 (W.D. Pa. 2002).  See also Capilli v.
Whitesell Construction Co., 2006 WL 1722354, at *4 n.3 (D.N.J. June 21, 2006)
(noting that decision of Third Circuit, while "not precedential" is still "highly
persuasive in that it is a recent decision of a higher court.").  In Barnes, the
debtor's parental rights were terminated in state court.  On appeal in state court,
the Pennsylvania Superior Court affirmed the trial court's decision.  Barnes filed
his complaint in federal court pursuant to 42 U.S.C. § 1983 seeking injunctive and
monetary damages.  The Third Circuit held that Barnes' claims were barred by
the *Rooker-Feldman* doctrine.

see also Ayres-Fountain v. Eastern Savings Bank, 153 Fed. Appx. 91, 92-93 (3d

Cir. October 27, 2005) (not precedential) (ruling that  plaintiff's federal court

action seeking rescission of mortgage note and award of damages based on

fraud was barred by the *Rooker-Feldman* doctrine because relief in her favor

would "invalidate" the default judgment entered against her in a state foreclosure

action based on her default of the note and mortgage).  See also Taliaferro v.

Darby Township Zoning Board, 458 F.3d 181, 192 (3d Cir. 2006) ("Under the

*Rooker-Feldman* doctrine, a district court is precluded from entertaining an action

if the relief requested effectively would reverse a state court decision or void its

ruling.");[13] Denston v. Chapman, 2006 WL 2868249, at *1 n.1 (3d Cir. Oct. 10,

2006) (observing that, to the extent that the relief which the plaintiff requested

would require rejection of the state courts' judgments, the federal court was

lacking jurisdiction over those claims).[14]

---

[13]  In Taliaferro, supra, plaintiffs were neighboring property owners who
alleged that their property values would be diminished and their neighborhood
blighted by the Darby Township Zoning Hearing Board's decision to grant a
variance which permitted the  construction of a storage facility in a residential
zone.  Taliaferro, 458 F.2d at 185.   The Third Circuit reasoned that "a decision in
favor of [plaintiffs] on their due process claims [in district court] would not mean
that the [Zoning Hearing] Board abused its discretion in deciding that there was
substantial evidence to show that [the applicant] satisfied the criteria necessary to
obtain a zoning variance under Pennsylvania state law."  Id. at 193.

[14]  In Denston, supra, plaintiff was an inmate serving a thirty-year sentence
(continued...)

18

In the instant case, neither Debtor's TILA claim nor his RESPA claim was

raised in the state court action. Accordingly, neither claim was "actually litigated"

in that action. Knapper, supra, 407 F.3d at 580. Therefore, Debtor's claims in

the instant case can only be barred by the *Rooker-Feldman* doctrine if the claims

are "inextricably intertwined" with the state court adjudication.[15]

---

[14](...continued)
for having attempted to murder of his wife. After his assault on his wife, his son
was placed in the custody of other people and the plaintiff's parental rights were
terminated in state court. He subsequently filed his federal lawsuit pursuant to 42
U.S.C. §1983, alleging that his parental rights and rights to due process were
violated by the state court proceedings which terminated his parental rights.

In the same month in which it decided Denston, the Third Circuit applied
Rooker-Feldman in a different context and found it inapplicable. See Shallow v.
Rogers, 2006 WL 3051796 (3d Cir. October 27, 2006) (not precedential). In
Shallow, the Third Circuit held that the *Rooker-Feldman* doctrine did not apply to
a federal lawsuit commenced by a father who contended that his forced
psychological evaluation, which was ordered by the state court in the context of a
custody battle, violated his constitutional and civil rights. In the lawsuit, the father
named as defendants the state court judge who entered the order forcing the
father to undergo the evaluation, the attorney for his ex-wife and the court-
ordered psychologist for his children. While the Third Circuit noted that the
father's complaint in the federal lawsuit arose out of his "ongoing custody battle"
with his ex-wife, it concluded that the father's complaint did not complain of
injuries caused by the state court judgment regarding the custody battle.

[15] Some Courts of Appeal disagree with the Third Circuit and hold, based
on Exxon, that the phrase "inextricably intertwined" no longer has any
independent legal significance to application of the *Rooker-Feldman* doctrine.
These Courts of Appeal reason that the phrase "inextricably intertwined" is
"simply a descriptive label attached to claims that meet the requirements outlined
in Exxon[.]" Hoblock v. Albany County Board of Elections, 422 F.3d 77, 86-87 (2d
Cir. 2005); see also McCormick v. Braverman, 451 F.3d 382, 394-95 (6th Cir.
2006) (ruling that the phrase "inextricably intertwined"is merely a conclusion that
(continued...)

## C.  THE "INEXTRICABLY INTERTWINED" REQUIREMENT

## (1) Count I

Debtor's claim for rescission under TILA clearly would render the state

court mortgage foreclosure judgment unenforceable.[16]  The conclusion that

_____

[15](...continued)
a claim "asserts an injury whose source is a state court judgment[.]"); <u>Bolden v. City of Topeka, Kansas</u>, 441 F.3d 1129, 1141 (10th Cir. 2006) (agreeing with 4th Circuit that the phrase "inextricably intertwined" merely "'states a conclusion'" and does not impose an independent legal requirement); <u>Davani v. Va. Dept. of Transportation</u>, 434 F.3d 712, 719 (4th Cir. 2006) (concluding that after <u>Exxon</u>, the phrase "inextricably intertwined" does not "create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for an injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal court.").

[16]  <u>See</u> <u>Crutchfield v. Countrywide Home Loans</u>, 389 F.3d 1144, 1148-49 (10th Cir. 2004) (plaintiff's action seeking a declaratory judgment that he had validly rescinded his mortgage under TILA was barred by *Rooker-Feldman* doctrine since the declaratory judgment, if granted, would "undo the effect of the state court [foreclosure] judgment" that was previously entered against the plaintiff); <u>R-G Financial Corporation v Vergara-Nunez</u>, 381 F. Supp.2d 1 (D. Puerto Rico 2005) (concluding that right to rescind and counterclaim under TILA were barred under the *Rooker-Feldman* doctrine because they were inextricably intertwined with the state court foreclosure judgment), aff'd, 446 F.3d 178 (1st Cir. 2006); <u>Smith v. Litton Loan Servicing, L.P.</u>, 2005 WL 289927, at *7-*8 (E.D. Pa. Feb. 4, 2005) (ruling that *Rooker-Feldman* doctrine barred complaint seeking rescission of mortgage and note since the complaint was filed after a judgment for mortgage foreclosure was entered in state court); <u>Thompson v. Ameriquest Mortgage Company</u>, 2003 WL 22012207, at *3 (S.D. Ill. Aug. 21, 2003) (holding that court lacked subject matter jurisdiction based on the Rooker-Feldman doctrine to hear plaintiff's claims under TILA since "implicit in the [state court judgement] was that court's determination that the Mortgage was valid."); <u>Randall v. Bank One National Association (In re Randall)</u>, *supra*, 2006 WL 3833919, at *8
(continued...)

Debtor's claim for rescission would have the effect of undermining Wachovia's

foreclosure judgement is the death knell to his claim.  Since granting rescission

would negate the foreclosure judgement, Debtor's TILA claim for rescission in

Count I is "inextricably intertwined" with the state court adjudication.  The claim is,

therefore, barred by the *Rooker-Feldman* doctrine.

In Count I, Debtor requests rescission and monetary damages related to

the alleged failure to rescind.  Having determined that this Court lacks subject

matter jurisdiction to determine whether Debtor is entitled to rescission, we

cannot award damages based on defendants' failure to rescind.[17]  Count I will,

---

[16](...continued)
("Clearly, a determination by me that the 2000 loan transaction was validly
rescinded in April of 2003 would have the effect of reversing the state court
foreclosure judgment and rendering it unenforceable."); accord Faust v. Deutsche
Bank National Trust Company (In re Faust), supra, 353 B.R. at 100 (ruling that
UDAP claim violated *Rooker-Feldman* because the rescission of the loan would
negate the state court judgment).

[17] Chase and Wachovia also assert that, to the extent Debtor's requested
monetary damages in Count I are not dependent upon rescission, they are time
barred by the one-year statute of limitations for monetary damages under TILA.  I
need not address this argument because, as framed, Count I seeks monetary
damages based solely on defendants' alleged failure to rescind.  See Complaint,
Count I, ¶16.  See also Wilson v. Homeowners Loan Corp., 263 F. Supp. 2d
1212, 1218 (E.D. Mo. 2003) ("A failure to recognize a proper rescission,
whenever it is made or for whatever proper reason, is a separate TILA
violation[.]").  Consistent with this fact, Debtor states in his memorandum in
opposition to the motion that Count I "seeks to have the Debtor's rescission of the
Loan [under the TILA"]) . . . declared valid and to obtain remedies therefor."
Debtor's Memorandum of Law in Opposition to the Motion of the Defendants to
Dismiss the Debtor's Complaint at 2.  Debtor's request for damages based on the
(continued...)

therefore, be dismissed in its entirety.

## (2) Count II

In Count II, Debtor asserts his claim for damages under RESPA.  <u>See</u>

Complaint, Count II.  This claim seeks an award of monetary damages only.  In

Pennsylvania, the purpose of a mortgage foreclosure action is solely to effect a

judicial sale of the mortgaged property.  <u>New York Guardian Mortgage Corp. v.</u>

<u>Dietzel</u>, 362 Pa. Super. 426, 431, 524 A.2d 951, 953 (1987).  It is not a judgment

for damages.  <u>Id</u>.  The Pennsylvania Supreme Court recently ruled that it is

impermissible to assert a set-off for monetary damages as a counterclaim in a

mortgage foreclosure action.  <u>Green Tree Consumer Discount Co. v. Newton</u>,

909 A.2d 811, 815-16  (Pa. 2006).  Since Debtor could not bring a counterclaim

under RESPA in the mortgage foreclosure action, an award of damages on

Debtor's RESPA claim would not negate the foreclosure judgment.

Consequently, Count II is not inextricably intertwined with the foreclosure

judgment and is not barred by the *Rooker-Feldman* doctrine.

---

[17](...continued)
failure to rescind is timely.  Nevertheless, for the reasons stated above, Count II
shall be dismissed.

### III. Whether Debtor's Claim for Damages under RESPA Must Be Dismissed Because a Response Was Sent to Debtor's "Qualified Written Request"

In Count II of the Complaint, Debtor asserts that Chase as the "servicer" of

Debtor's loan (as opposed to Wachovia who is the current owner of the loan)

failed to respond to Debtor's qualified written request with "an acknowledgment of

receipt within 20 days of such request." Complaint ¶18. He seeks damages and

costs against Chase under §§2605(f)(1) and (f)(3) of RESPA.[18]

---

[18] Subsections (f)(1) and (f)(3) of §2605 provide, in pertinent part:

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals:

In the case of any by an individual, an amount equal to the sum of –

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

* * *

(continued...)

23

Section 2605(e) of RESPA states, in pertinent part:

> If any servicer of a federally related mortgage loan
> receives a qualified written request from the borrower
> (or an agent for the borrower) for information relating to
> the servicing of such loan, the servicer shall provide a
> written response acknowledging receipt of the
> correspondence within 20 days[.]

12 U.S.C. §2605(e).  On a motion to dismiss under Rule 12(b)(6), the Court is

required to accept the allegations of the Complaint as true and make all

reasonable inferences in favor of the Debtor.  In the Complaint, Debtor alleges

that Wachovia, the owner of the loan responded to his QWR, but that Chase, the

servicer of the loan, did not.  Based on the language of the statute, Chase had

the obligation to 'provide a written response acknowledging receipt of the

correspondence within 20 days."12 U.S.C. §2605(e).  Accepting the allegations of

the Complaint as true and viewing them in the light most favorable to the debtor,[19]

---

[18](...continued)
> (3) Costs
>
> In addition to the amounts under paragraph
> (1) ..., in the case of any successful action
> under this section, the costs of the action,
> together with any attorney's fees incurred in
> connection with such action as the court
> may determine to be reasonable under the
> circumstances.

12 U.S.C. §2605(f)(1) & (f)(3).

[19]  Debtor admits in his Complaint that Wachovia responded to his QWR
(continued...)

Count II states a claim that Chase violated its obligation under §2605(e).

Therefore, the Motion shall be denied as to Count II.

## CONCLUSION

Based on the Third Circuit's view of the *Rooker-Feldman* doctrine, this

Court lacks subject matter jurisdiction over Count I of the Complaint. Count I

shall be dismissed. However, defendants' argument for dismissal of Count II

shall be denied. Under the standard for dismissal under Rule 12(b)(6), Count II

states a claim upon which relief may be granted.

---

[19](...continued)
and attaches as Exhibit "E" to the Complaint a copy of the response. See
Complaint ¶9. Exhibit "E" is a letter, dated May 8, 2006, from Angela M. Michael,
Esquire of McCabe, Weisberg & Conway, P.C. to Debtor's counsel,
acknowledging receipt of the QWR and stating that a timely response would be
forthcoming. See Complaint, Exhibit "E."   Defendants assert in their
memorandum of law in opposition to the Motion that Ms. Michael's letter was sent
on Chase's behalf. See Memorandum of Law of Chase Manhattan Mortgage
Corporation and Wachovia Bank, N.A., as Trustee, Successor in Interest to First
Financial Mortgage Group, Inc., in Support of Motion to Dismiss Complaint of
Robert R. Cooley at 15.  However, the letter does not identify the party upon
whose behalf it was sent.  Therefore, based on the standard for motions to
dismiss, this Court is bound to accept as true Debtor's allegation that the letter
was sent on behalf of Wachovia only and not Chase.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re** | **:** | **Chapter 13** |
| **ROBERT R. COOLEY** | **:** | |
| **Debtor** | **:** | **Case No. 06-11586 (JKF)** |

| | | |
|---|---|---|
| **ROBERT R. COOLEY** | **:** | |
| **Plaintiff** | **:** | |
| **v.** | **:** | |
| **WACHOVIA MORTGAGE COMPANY,** | **:** | **Adversary No. 06-0279** |
| **CHASE MANHATTAN MORTGAGE** | | |
| **CORPORATION, and** | **:** | |
| **FIRST FINANCIAL MORTGAGE GROUP,** | | |
| **INCORPORATED** | **:** | |
| **Defendants** | **:** | |

# <u>ORDER</u>

This 13th day of March, 2007, upon consideration of the Motion of Chase

Manhattan Mortgage Company and Wachovia Bank, N.A. as Trustee and

Successor in Interest to First Financial Mortgage Group, Inc.  To Dismiss

Complaint of Robert R. Cooley ("Motion"), and after a hearing with notice, and for

the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** and **DECREED** that:

(1)    The Motion is **GRANTED IN PART**.

(2)    Count I is **DISMISSED**.

(3)    The Motion is **DENIED** as to Count II.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

**Counsel for Plaintiff/Debtor**
David A. Scholl, Esquire
6 St. Albans Avenue
Newtown Square, PA 19073

**Counsel for Wachovia Bank, N.A. as Trustee
and Chase Manhattan Mortgage Corporation**
Joseph Riga, Esquire
McDowell Riga
842 West Main Street, 2nd Floor
Bryn Mawr, Pennsylvania 19010

**Chapter 13 Trustee**
William C. Miller, Trustee
PO Box 40119
Philadelphia, PA 19106-0119

2